UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTHONY DiSIMONE,

                        Petitioner,

          - against -

WILLIAM E. PHILLIPS, Superintendent Green Haven
Correctional Facility, and ELIOT L. SPITZER,
Attorney General of New York,

                        Respondents.
------------------------------------------------------------------x

04 Civ. 3128 (CLB)

*Memorandum and Order*

Brieant, J.

      By his counseled Petition filed April 23, 2004, Mr. Anthony DiSimone, a state prisoner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted following a jury trial in County Court of Westchester County (Cowhey, J.) on January 26, 2001. Petitioner was acquitted of intentional murder (Count 1) but was convicted of Depraved Indifference Murder (Count 2) under New York Penal Law § 125.25(2) and also of separate Counts of Tampering with Physical Evidence.

      His conviction was affirmed on direct appeal (298 A.D. 2d 399) and leave to appeal to the
New York Court of Appeals was denied, 99 N.Y. 2d 613 (2003).

      The only issue argued on direct appeal relevant to this proceeding was that the statute concerning Murder with Depraved Indifference was unconstitutionally vague. Petitioner also filed a supplemental *pro se* brief to the Appellate Division, inspired by this Court's decision in

-1-

*Jones v. Keane,* 02 Civ. 1804 (reversed on other grounds, 329 F.3d 290 (2d Cir. 2003)), claiming the Depraved Indifference Murder statute was unconstitutional both on the rationale adopted by this Court in the *Jones* case and implicit in the dissent in *People v. Sanchez,* 98 N.Y. 2d 373 (2002).

On October 19, 2004, after the filing of the Petition herein, the New York Court of Appeals decided *People v. Payne,* 3 N.Y. 3d 266 (2004) reversing a judgment entered on a jury verdict convicting a defendant of Depraved Indifference Murder after acquitting him of Intentional Murder. In *Payne,* the Defendant, following a telephone conversation with the victim, took his twelve-gauge shotgun, which he referred to as an "elephant gun", loaded it and walked next door to confront the victim in his home. After the two exchanged words, Defendant shot the victim at point-blank range below the heart and just above the navel, killing him.

In *Payne,* the New York Court of Appeals made it clear that Depraved Indifference Murder may not be properly charged in the overwhelming majority of homicides prosecuted in New York, where the conduct of the accused evinced an intent to kill. The Court of Appeals observed that "indifference to the victim's life, we explained, contrasts with the intent to take it. Here...the evidence established Defendant's intent to kill."

The facts of this case are indistinguishable from *Payne.* In this case, Petitioner, the son of a Lucchese crime family member, was an undisclosed principal of a ginmill in Yonkers. The victim of the crime, Louis Balancio, was a twenty-one year old college student who, with other

friends, went bar hopping in New Rochelle and Yonkers on February 3, 1994. Their third port of call was Petitioner's Strike Zone Bar in Yonkers.

At some point in the early morning, Balancio and his friends tried to get into the Strike Zone Bar but the bouncer would not let them. At the same time, admission was denied to another group consisting of Albanians having no relationship with Balancio. A fight broke out in the street in front of the ginmill. Among those fighting was the victim Louis Balancio. Petitioner, apparently believing him to be a part of the Albanian gang, pulled Balancio off the pile of fighting bodies, grabbed him, held him and stabbed him thirteen times. All but two of the stabbing wounds were on the left side of Balancio's body, four were in the front and six in the back and three on the upper left arm. One stabbing pierced the upper lobe of the victim's left lung and another one pierced his heart. Another stab wound pierced the lower lobes of the left lung and the left kidney. The stab wounds together caused Balancio to lose massive amounts of blood quickly and caused his death at approximately 2:15 a.m. The autopsy report describes the wounds in detail. The cause of death was found to be multiple stab and incised wounds of the chest, back, upper extremity, heart, lung and kidney caused by a sharp-edged instrument such as a knife. The medical examiner found that every one of the thirteen wounds contributed to the victim's death, and that death would have followed within fifteen minutes.

Mr. DiSimone became a lammister and apparently hid in plain sight in Yonkers until he surrendered to local Police on November 9, 1999, after having been listed on the FBI's Most Wanted Internet Website.

Clearly, a case of intentional murder was presented, indistinguishable from the case of *Payne*. In *Payne,* the New York Court of Appeals reversed the conviction because the Defendant did not commit Depraved Indifference Murder within the meaning of the statute. *Payne* finds its basis more in the law of evidence than in any issues of Constitutional law, although Constitutional issues of statutory vagueness as construed seem to this Court to be implicit.

*Jones* and *Sanchez* involve what this Court for convenience refers to as the "low end" of Depraved Indifference Murder, where under the statute and New York case law, the crime is conflated with the Crime of Manslaughter, while Petitioner's case and *Payne* have to do with the "high end" where Depraved Indifference Murder has been conflated with Intentional Murder prior to the New York Court of Appeals decisions in *Payne*, and *People v. Gonzalez*, 1 N.Y. 3d 464 (2004).

While Petitioner has argued a Constitutional claim in the Appellate Division, the *Payne* decision is not authority for a finding of facial Constitutional vagueness or vagueness as applied with respect to the "high end" of Depraved Indifference Murder. Indeed, the Court of Appeals of New York has not spoken authoritatively since *Sanchez* with regard to the "low end" situation,
although it would appear to this Court that in light of *Payne,* the majority opinion in the *Sanchez* case is no longer good law.

Accordingly, by its interlocutory order in this case dated January 12, 2005, this Court, concluding that it was far from clear that the New York Courts had received an adequate opportunity to address facial unconstitutionality, or unconstitutionality as applied at the "high end" of Depraved Indifference Murder, because *Payne* had not yet been decided when Petitioner's conviction became final, and that the Courts of New York should have a full and an effective opportunity to address the issues, fully and fairly presented. Accordingly, this Court stayed all proceedings to permit Petitioner to present to the state courts "his claim that his conviction was not supported by legally sufficient evidence, within the meaning of the recent *Payne* case and alternatively, that the applicable statute is unconstitutional, facially or as applied to Petitioner."

This has been done. On February 9, 2005, Petitioner filed a motion pursuant to New York CPL § 440.10 in County Court, Westchester County, presenting those grounds and urging that his conviction was obtained in violation of both the New York and United States Constitution. Petitioner argued that he was not convicted upon proof beyond a reasonable doubt of all the elements of the crime of which he was charged, because the conduct of which he had been charged had been determined in *Payne* not to constitute Depraved Indifference Murder.

This motion was denied on June 30, 2005 by Judge Zambelli. Familiarity with her decision on the part of the reader is assumed. Specifically, the County Judge found that sufficiency of the trial evidence can be reviewed only by direct appeal and that although Petitioner raised, in his appeal, the unconstitutionality of the Depraved Indifference Murder

Statute following the decision in *Sanchez,* and claimed it was unconstitutionally vague, in making that claim and in making the same claim in his application for leave to appeal to the Court of Appeals, the County Court held that the Defendant did not specifically challenge the legal sufficiency of the trial evidence and therefore this claim was not preserved.

This finding seems doubtful to say the least, because the supplemental brief in the Appellate Division on direct appeal specifically did argue that the facts of the case could not support a conviction of Depraved Indifference Murder, which this Court regards as an argument of legal insufficiency of the trial evidence.

Thereafter, on September 8, 2005, the Appellate Division of the Supreme Court Second Judicial Department denied Petitioner's motion for leave to appeal, without opinion.

In light of the foregoing, this Court concludes that this Petitioner has exhausted his state remedies.

As might be anticipated, the District Attorney now claims that the Petitioner is barred from consideration on the merits in this Court because the merits of Petitioner's federal claims before the state court were foreclosed by an adequate and independent state procedural bar.

This Court believes that in the factual context of this particular case, the so-called procedural bar is unavailable. The finding of the County Court that insufficiency of the evidence

was not raised on direct appeal, is just plain wrong and represents a classic case of a decision that was based on an unreasonable determination of the facts in light of the record, within the meaning of 28 U.S.C. § 2254 (d)(2). Petitioner's brief specifically urged the Appellate Division to adopt the dissenting opinion of Judge Smith in *People v. Sanchez,* 98 N.Y. 2d 323, 325 (2002) in which he concluded:

> The evidence did not support a charge of depraved indifference murder because the risk of death or serious bodily injury from a shot at that close range was a certainty and not merely a grave risk.

The next point for consideration in connection with this Petition is whether the *Payne* decision is retroactive as to convictions like those of Mr. DiSimone, which were final in the state court system before October 19, 2004.

The decision in *Payne* itself is silent on this issue. In *People v. Crichlow,* 12 A.D. 3d 674 (decided February 28, 2005), the Appellate Division of the New York Supreme Court, Second Judicial Department, upon reargument in a case in which petitioner sought *coram nobis,* vacated a prior denial of the writ with respect to a judgment of conviction on April 14, 2000. The Appellate Division held that "the appellant is granted leave to serve and file a brief on the issues of whether his Conviction of Murder in the Second Degree violated *People v. Payne*, 3 N.Y. 3d 266, and whether *People v. Payne* is to be given retroactive effect to apply to a judgment previously affirmed on appeal." So far as this Court can ascertain, there has been no subsequent decision in the *Critchlow* case. Subsequently, the Third Department in *People v. Walsh,* 800 N.Y.S. 2d 853, decided September 15, 2005 held that "contrary to petitioner's suggestion,

*People v. Payne,* 3 N.Y. 3d 266 (2004) did not declare a retroactive change in the law but rather applied existing caselaw." No other New York authority directly on point is cited to the Court.

While it is by no means clear, the Court concludes that the rule of *Payne* will be treated by the New York Court of Appeals as retroactive in application to a case on collateral review of a conviction which was final when *Payne* was decided. Such was the ruling of the New York Court of Appeals in *People v. Eastman,* 85 N.Y. 2d 265 (1995), ordering a new trial following a change in the applicable law on Confrontation, by the United States Supreme Court. Similarly, in *People v. Morales,* 37 N.Y. 2d 262 (1975), a finding that a statute limiting the availability of alibi testimony was unconstitutional, was granted retroactive application. To the contrary, *see People v. Mitchell*, 80 N.Y. 2d 519 (1992), in which a new rule that a defendant had the right to be present during jury interviews at sidebar was held to be prospective only). See also *People v. Pepper,* 53 N.Y. 2d 213 (1981) (State rule prohibiting uncounseled interrogation of a person under Indictment held not retroactive.)

This Court concludes that the rule of *Payne* is and should be regarded as retrospective and applicable to all persons unjustly convicted of Depraved Indifference Murder who are still serving time. The Court also concludes that the rule of *Payne* rises to a constitutional level.

While frequently quoted judicial cant is to the effect that a "petitioner challenging the sufficiency of the evidence bears a heavy burden," that burden is not impossible. A rational trier of the fact must find the essential elements of the crime of conviction beyond a reasonable doubt, *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). State law identifies the elements of the crime.

*Fama v. Commissioner,* 235 F. 3d 804, 811 (2d Cir. 2000). Simple logic, confirmed by the New York Court of Appeals decisions cited, is to the effect that "an act is either intended or not intended; it cannot simultaneously be both," *People v. Gallagher,* 69 N.Y. 2d 525, 529 (1987) quoted with approval in *Gonzalez, supra.* The record evidence in this case cannot support the element of the crime of Depraved Indifference Murder. The error is of Constitutional magnitude, and denial of relief to Petitioner is an unreasonable application of the Constitutional principle clearly established by the Supreme Court of the United States since *In re Winship ,* 397 U.S. 358
(1970) and prior cases, holding that the prosecution must prove all elements of the crime charged beyond a reasonable doubt.

      Accordingly, the writ must be granted in this case.

      Our conclusion in this regard is supported by *Policano v. Herbert,*   F.3d   (2d Cir. November 15, 2005) decided after this matter was fully submitted for decision. In *Policano* which appears to be factually indistinguishable from this case, our Court of Appeals held that the writ was properly issued where a petitioner who, seeking revenge for a prior assault, confronted the victim on the street and fired four shots at point blank range, one of them after the victim was lying on the ground, killing him. As in the instant case *Policano* was convicted of Depraved Indifference Murder. Following an instruction of the trial judge, no verdict was rendered on the court charging intentional murder.

In affirming the grant of the writ, our Court of Appeals agreed with the conclusion of the district court that the writ must be granted because "according to the evidence, he intentionally committed [the homicide] if he committed it at all" and acted with a deliberate intent to kill. Respondent attempts to distinguish *Policano* by arguing (letter brief dated November 22, 2005) that in *Policano* "there was no wild melee against a victim whom the defendant did not even know...indeed Disimone was never sure who it was that he killed during the mad knife slashing at a pile of grappling bodies that recklessly claimed Balancio's life."

With all respect to Respondent's counsel, in order to commit intentional murder, one need not know the identify of the victim; and DiSimone did not engage in "mad knife slashing at a pile of grappling bodies." The record shows instead that he pulled one body off the pile, held him and stabbed him thirteen times, each one contributing to Balancio's death. In this case, the risk of death was a certainty and not merely a grave risk, and the action deliberate rather than reckless.

Like the Court of Appeals in *Policano,* this Court agrees that it is "disturbing" that a killer is set free because he meant to kill his victim, and is now protected from a retrial of the intentional murder count in the indictment by Constitutional principles of double jeopardy. This is part of the price of Freedom which society pays.

The Petition is granted. The Clerk shall file a final judgment, which shall provide that its execution is hereby stayed pending appellate finality. The Court rejects all other claims set forth

in the original petition filed herein, as either not preserved or not exhausted, or lacking in merit.

The writ does not extend to Petitioner's conviction for two counts of tampering with physical evidence or to the separate sentences imposed thereon.

X

        X

                X

                    X

SO ORDERED.

Dated: White Plains, New York
November 30, 2005

                                                             *Charles L. Brieant* (signature)
                                                             Charles L. Brieant, U.S.D.J.